**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

MIKAYLA GREGORY,

                    Plaintiff,

v.                                                          CIVIL ACTION NO.   5:22-cv-00330

TOLER APPRAISAL GROUP, LLC, and
GATEWAY MORTGAGE GROUP, LLP,

                    Defendants.

**MEMORANDUM OPINION & ORDER**

The Court has reviewed *Defendant Gateway Mortgage Group LLC's Motion to Dismiss for Failure to State a Claim* (Document 6), the corresponding *Memorandum of Law in Support of Its Motion to Dismiss for Failure to State a Claim* (Document 7), the *Plaintiff's Memorandum in Opposition to Gateway Mortgage's Motion to Dismiss* (Document 11), *Defendant Gateway Mortgage Group LLC's Reply in Support of Its Motion to Dismiss for Failure to State a Claim* (Document 13), the *Third Amended Class Action Complaint* (Document 1-2), and all exhibits appropriate to consider at this stage of the proceeding.[1]

**FACTUAL BACKGROUND**

On April 21, 2020, the Plaintiff, Mikayla Gregory, filed a complaint against the Defendants in the Circuit Court of Raleigh County, West Virginia, alleging seven state law claims.  On August 13, 2020, she filed an amended class action complaint, alleging five state law claims

---

[1] As discussed below, some of the attached exhibits will not be considered because such exhibits are inappropriate in analyzing a motion to dismiss pursuant to Rule 12(b)(6).

against the same Defendants.   On March 23, 2021, the Plaintiff again amended, filing a second amended class action complaint alleging two state law claims against the Defendants.   On April 13, 2022, Ms. Gregory moved to add a claim pursuant to the Truth in Lending Act (TILA), 15 U.S.C. § 1639e.   On July 22, 2022, her motion was granted and the governing complaint, the *Third Amended Class Action Complaint* (Complaint) (Document 1-2), was deemed served.[2]   The action was subsequently removed pursuant to 28 U.S.C. § 1331.   The Complaint names Gateway Mortgage Group, LLP (Gateway) and Toler Appraisal Group, LLC (Toler), and alleges that the Defendants have engaged in improper lending and appraisal practices.

In 2018, the Plaintiff and her then husband, Roger Gregory Jr., began discussing the possibility of refinancing his existing residential loan on property that was purchased prior to the marriage.   Ms. Gregory agreed to use her credentials as an active-duty member of the military to obtain a beneficial loan through the Department of Veterans Affairs (VA).   To proceed with refinancing, Ms. Gregory sought to obtain a loan from Gateway.

Gateway contacted Toler to perform an appraisal.   Gateway sent Toler "an appraisal request form, labeled VA Request for Determination of Reasonable Value." (Compl. at ¶ 39.) That appraisal request form specifically stated that Ms. Gregory was seeking a loan of $250,000, under the line titled "Refinancing Amount of the Proposed Loan".   (*Id.*)   Toler was to be an independent appraiser, performing a neutral valuation of the property, paid for by the Plaintiff. However, by including the proposed loan amount of $250,000 on the appraisal request, Gateway interfered with Toler's neutral valuation.   As a result, the value of the property and the principal of the loan were artificially inflated.   Gateway "did not inform [the Plaintiff] of its efforts to

---

[2]  For the purposes of this motion to dismiss, the Court will treat the factual allegations contained in the *Third Amended Class Action Complaint* as true. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

influence the appraisal by passing on loan amounts."   (*Id.* at ¶ 47.)   In fact, it was not until April 15, 2021, that Ms. Gregory received, via discovery, the tainted appraisal request form sent to Toler by Gateway.

Toler's ultimate appraisal of the property was $225,000, and a promissory note with a principal balance of $230,400 was executed by the Plaintiff in favor of Gateway.   Ms. Gregory alleges that the appraisal was not bona fide and failed to adhere to uniform standards of professional appraisal practice.   In addition to Gateway's violation of appraisal independence, the Plaintiff states that Toler (1) failed to confirm that the home described in the appraisal was located within the boundaries of the subject property, (2) materially overstated the amount of acreage of the subject property, (3) conducted a faulty sales comparison, and (4) committed other errors, within its appraisal report.   (*Id.* at ¶ 10.)   Because of this faulty appraisal, Defendants Gateway and Toler inflated the value of the property to $225,000, as opposed to its true fair market value of $198,000, resulting in harm to Ms. Gregory.   (*Id.* at ¶ 19.)

It was not until the Plaintiff's separation from Roger Gregory Jr. that the inflated appraisal value of the land began to come to light.   During the separation, Mr. Gregory stated that the "marital home is not on the land owned by the parties" and described the property as "unimproved land with a value of $5,000." (*Id.* at ¶¶ 16, 20.)   Although a prior survey of the property reflects that the home is within the boundaries, it does indicate that the property is 1.8 acres, materially less than what is reflected in the appraisal.   (*Id.* at ¶ 17.)   Ms. Gregory is now unsure if the marital home is actually located on the subject property.   Even if the home is located on the property, the property is materially smaller, and the loan still exceeds the property's fair market value.   The divorce was finalized on December 2, 2019.   Pursuant to the divorce, Ms. Gregory was required

3

to vacate the home, and her ex-husband was awarded exclusive ownership and possession of the home.   The subject loan has not been modified and Ms. Gregory remains obligated to repay Gateway despite having no possessory or ownership interest in the property.

The Complaint contains the following causes of action: Count I – an individual claim of Illegal Loan in Excess of Fair Market Value or Residential Property, as to Gateway; Count II – an individual claim of Breach of Professional Standards and Negligence, as to Toler; and Count III – a class claim of a Truth-In-Lending Violation, 15 U.S.C. § 1639e.   Ms. Gregory requests certification of the proposed class, injunctive relief, compensatory damages, restitution, attorneys' fees and costs, and prejudgment and post judgment interest.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).   "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid

4

of further factual enhancements." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

5

When a court is faced with attached exhibits to either the complaint or a motion to dismiss, a court may consider such documents if a document is "integral to and explicitly relied on in the complaint," and when "the plaintiffs do not challenge [the document's] authenticity." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).   To be integral, the document cannot merely be referenced in the complaint, it must be so "central or integral to the claim in the sense that its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 819 (S.D.W. Va. 2014) (Chambers, J.).

If a document is not "integral" a court may still consider it, under the narrow exception of judicial notice of matters of public record and items appearing in the record of the case.   *Zak*, 780 F.3d at 607; *see also Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir.2004), 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2022).   However, under this exception "the court must construe such facts in the light most favorable to the plaintiffs." *Zak*, 780 F.3d at 607 (citing *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir.2013)).

Fifteen exhibits have been attached to the motion to dismiss and subsequent briefing.[3] Neither the closing documents (Exhibit A, Document 6-1) nor the Veteran Affairs loan summary sheet (Exhibit B, Document 6-2) are explicitly referenced in or integral to the Complaint and therefore the Court will not consider them.   However, the appraisal request form (Exhibit E, Document 6-5), sent from Gateway to Toler, is explicitly discussed in the Complaint, and is

---

[3] The standard applicable to the Court's consideration of documents attached to a defendant's motion to dismiss is also applicable to documents attached to a plaintiff's response. *Tinsley*, 4 F. Supp. 3d at 819 (citing *Fisher v. Maryland Dep't of Pub. Safety & Corr. Servs.*, No. JFM–10–CV–0206, 2010 WL 2732334, at *2 n.2 (D. Md. July 8, 2010)).

6

integral to the claims stated therein.   The Plaintiff has not questioned the authenticity of Exhibit E and it will therefore be considered.   A 2004 version of the Veterans Affairs appraisal request form (Exhibit 7, Document 11-7) is not explicitly referenced in the Complaint, nor is it clearly a matter of public record, and, therefore, will not be considered.   The remaining attached exhibits,[4] which include prior matters of the record during the state court proceeding, portions of the VA Lenders' Handbook, case opinions, regulations, and statutes, are either matters of public record or appear in the record of this case and can be considered at this stage.

## DISCUSSION

Gateway now moves for the dismissal of Ms. Gregory's claims alleged against it in Count I and Count III.

### (A)  Count I – Illegal Loan in Excess of Fair Market Value or Residential Property

Ms. Gregory alleges that Gateway has violated West Virginia Code § 31-17-8(m)(8), which prohibits securing a primary or subordinate mortgage loan on a residential property in excess of the fair market value.   Gateway argues that this claim fails because (1) Gateway can utilize the government exception within § 31-17-8(m)(8), (2) Gateway relied on a bona fide appraisal of an independent third party, and therefore is not subject to § 31-17-8(m)(8) and the VA regulations preempt § 31-17-8(m)(8).   Ms. Gregory, in response, argues that (1) Gateway reads the government exception too broadly, (2) Gateway cannot meet the elements of the statute's affirmative defense at this stage of the proceedings, and (3) the Supremacy Clause does not apply to the VA Lenders' Handbook.[5]

---

[4] Those exhibits are Documents 6-3, 6-4, 11-1, 11-2, 11-3, 11-4, 11-5, 11-6, 11-8, 11-9, and 11-10.

[5] Ms. Gregory also argues that Gateway has waived all of its arguments regarding § 31-17-8(m)(8) because it offers only cursory arguments. The Court observes that Gateway failed to fully develop its arguments in the opening

*(1) Government Exception*

Gateway argues it can utilize the "government" exception contained in § 31-17-8(m)(8), which states:

> [T]his prohibition does not apply to any mortgage modification or refinancing loan made in participation with and in compliance with the federal Making Homes Affordable program, or any other mortgage modification or refinancing loan eligible under any government sponsored enterprise requirements or funded through any federal or state program or litigation settlement.

Specifically, Gateway argues that this exception applies because "Ms. Gregory's cash-out loan . . . is sponsored by the Department of Veteran Affairs."  (Def. Memo. at 10.)   The Defendant carefully explains that it is not arguing that the loan was made pursuant to the Making Home Affordable Program (MHAP) or that the loan was directly funded by the Department of Veterans Affairs.  (Def. Reply at 7–8.)   Rather, Gateway maintains that the government exception applies because the loan was "sponsored by" or "funded through" the Department of Veterans Affairs, regardless of whether the VA's loan program is classified as GSE or simply a federal program.  (*Id.* at 8.)   In keeping with Gateway's arguments, the relevant portions of § 31-17-8(m)(8) are the following:

> [T]his prohibition does not apply to any . . . mortgage modification or refinancing loan
> (1) eligible under any government sponsored enterprise requirements or
> (2) funded through any federal or state program or litigation settlement.

W. Va. Code § 31-17-8(m)(8) (structure and emphasis added).   Ms. Gregory responds that the Department of Veteran's Affairs is not a "government sponsored enterprise," and the Department

---

memorandum, only to then develop the arguments more fully in reply.  Although these actions fall short of the expectations of this Court, Gateway's arguments have been sufficiently stated to give both the Plaintiff and the Court the ability to respond to and weigh them.   Therefore, the arguments will not be dismissed due to waiver.

of Veteran's Affairs did not fund the loan, but guaranteed it, making the exceptions inapplicable. (Pl. Resp. at 20.)

Chapter 31, Article 17, of the West Virginia Code does not define the term "government sponsored enterprise" (GSE).   However, the "meaning of a word . . . must be drawn from the context in which it is used," and it is often the case that "the meaning of a word that appears ambiguous if viewed in isolation [will] become clear when the word is analyzed in light of the terms that surrounds it."   *King v. Nease*, 757 S.E.2d 782, 785 (W. Va. 2014) (citing *W. Virginia Health Care Cost Rev. Auth. v. Boone Meml. Hosp.*, 472 S.E.2d 411, 423 (W. Va. 1996)).   The term GSE in § 31-17-8(m)(8) is being used in the context of residential mortgages.

In the context of residential mortgages, GSEs are "private corporations chartered by Congress to provide stability in the United States mortgage market, assist in the provision of affordable housing and increase liquidity of mortgage investments."[6]   *In re Countrywide Fin. Corp. Mortg.-Backed Securities Litig.*, 900 F. Supp. 2d 1055, 1058 (C.D. Cal. 2012).   These GSEs include "the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association."   *Banca Cremi, S.A. v. Alex. Brown & Sons, Inc.*, 132 F.3d 1017, 1022 n.2 (4th Cir. 1997).   The VA cannot fairly be considered a private corporation providing stability in the housing market.   For those reasons, Gateway's contention that it is excepted from § 31-17-8(m)(8) because the VA is a GSE, fails.

---

[6] This definition is bolstered by the United States Government Publishing Office's description of GSEs:

> These enterprises were established and chartered by the Federal Government for public policy purposes. They are not included in the Federal Budget because they are private companies, and their securities are not backed by the full faith and credit of the Federal Government. However, because of their public purpose, statements of financial condition are presented, to the extent such information is available, on a basis that is as consistent as practicable with the basis for the budget data of Government agencies.

*Government Sponsored Enterprises*, https://www.govinfo.gov/content/pkg/BUDGET-2020-APP/pdf/BUDGET-2020-APP-2-4.pdf (last visited Feb. 27, 2023).

Gateway argues that even if the VA is not a GSE, Gateway can avoid the requirements of § 31-17-8(m)(8) because the loan was funded through a federal or state program or litigation settlement.  Ms. Gregory argues that the VA did not fund her loan, but merely guaranteed or insured part of the loan proceeds. (Pl. Resp. at 20.)

The statute does not otherwise define the term "funded" or "funded through."  In the absence of a definition, the West Virginia Supreme Court of Appeals applies the "common, ordinary and accepted meaning."  *State v. McClain*, 880 S.E.2d 889, 896 (W. Va. 2022) (citing Syl. pt. 6, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984).  According to Merriam-Webster's Dictionary, the verb "fund" means "to provide funds for."  *Merriam Webster Online*, https://www.merriam-webster.com/dictionary/funded (last visited Feb. 28, 2023).  The Cambridge Dictionary defines the verb "fund" to mean "to provide the money to pay for an event, activity, or organization."  *Cambridge Dictionary*, https://dictionary.cambridge.org/us/dictionary/english/fund?q=funded (last visited Feb. 28, 2023).

The Complaint does not allege that the VA provided the funds for the subject loan.   Rather, it is Ms. Gregory who pays for the mortgage, and the VA merely guarantees the loan.   The verb "guarantee" means "to undertake to answer for the debt, default, or miscarriage of."  *Merriam Webster Online*, https://www.merriam-webster.com/dictionary/guarantees (last visited Feb. 28, 2023).   There is nothing in the Complaint or otherwise to suggest that the VA's program guarantee provides any funds to pay for the mortgage.

Gateway argues that the preposition "through" modifies the meaning of "funded" to reflect that the statute excepts not only direct funding, but also loans "sponsored"[7]  by a federal program.

---

[7] Notably, Gateway does not offer a definition of what it means to "sponsor" a loan. This language seems to have been lifted from the phrase "government sponsored enterprise," but its bearing on what constitutes a program "funded

Otherwise stated, the Defendant argues that the phrase "funded through any federal . . . program" would include a federal program that "sponsors" (or guarantees) loans.  To be clear, the Court finds no ambiguity in the statutory term "funded through".  However, even if ambiguity existed, the West Virginia Legislature used the term "sponsored" in the same section in which it used the term "funded through".  Under rules of statutory construction, we must, therefore, presume that the Legislature intended the two terms to have distinct meanings.  And it is the mandate of the West Virginia Supreme Court of Appeals that "significance and effect must, if possible, be given to every section, clause, word or part of the statute."  Syl. Pt. 3, *Meadows v. Wal-Mart Stores, Inc.*, 207 W. Va. 203, 530 S.E.2d 676 (1999).  Had the Legislature deemed it appropriate that a loan guaranteed or "sponsored" (as interpreted by the Defendant ) by a government program should be excepted from § 31-17-8(m)(8), it could have easily stated so in specific terms.

To read the definition of "funded through" as Gateway urges would leave homeowners without protection merely because a government program assisted them in securing the mortgage, even though it never paid a cent of the loan.[8]  Lastly, W. Va. Code § 31-17-8 is a remedial statute, with the obvious purpose of protecting borrowers from unscrupulous lending practices, and the statute "must be liberally construed to accomplish that purpose."  *Harper v. Jackson Hewitt, Inc.*, 227 W. Va. 142, 151, 706 S.E.2d 63, 72 (2010). Thus, for the reasons stated above,[9] Gateway cannot benefit from the government funded exception under § 31-17-8(m)(8).

---

through" a federal program is opaque.

[8]  This Court's reading of § 31-17-8(m)(8) does not render the "funded through" language null.   The provision would still apply to federal programs that directly fund loans.

[9]  The Plaintiff raises several other arguments against Gateway's assertion of the GSE exception, including that (1) the loan was not a refinancing loan as far as Ms. Gregory was concerned, (2) there is no policy reason for such an exemption, and (3) Gateway has waived this argument for failure to develop it.  (Pl. Memo at 15, 20.)   However, the Court finds that the above-discussed arguments by the Plaintiff are more than sufficient to preclude the applicability of the GSE exception.

*(2) Bona Fide Appraisal Defense*

Next, Gateway argues that it can avail itself of the defense of relying upon a bona fide written appraisal.  Ms. Gregory responds that she has sufficiently pled a violation of § 31-17-8(m)(8).

Section 31-17-8(m)(8) allows a defendant to argue that it relied on a bona fide appraisal as an affirmative defense.  *Quicken Loans, Inc. v. Walters for Walters*, 801 S.E.2d 509, 513 (W. Va. 2017).  "[T]he burden of establishing an affirmative defense rests on the defendant." *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  A motion under Rule 12(b)(6) is not generally intended "to address the merits of any affirmative defenses," but rather "to test the legal adequacy of the complaint."  *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).  However, "the defense may be reached by a motion to dismiss filed under Rule 12(b)(6) . . . if all facts necessary to the affirmative defense clearly appear on the face of the complaint."  *Id.*; *Brooks v. City of Winston Salem*, 85 F.3d 178, 181 (4th Cir. 1996) (emphasis added).

This affirmative defense requires that the lender show it relied "upon a bona fide written appraisal of the property made by an independent third-party appraiser, duly licensed or certified by the West Virginia Real Estate Appraiser Licensing and Certification Board and prepared in compliance with the uniform standards of professional appraisal practice." W. Va. Code § 31-17-8(m)(8)  The Complaint does not establish that Gateway so relied.  Rather, the allegations state the opposite. Ms. Gregory has cast doubt that the appraisal was conducted in good faith, independently, or in compliance with uniform standards.  (Compl. at ¶10, 36.)  Thus, the Court finds that the facts necessary to establish an affirmative defense under § 31-17-8(m)(8) are not

12

present on the face of the Complaint, making dismissal on that ground inappropriate at this stage of the proceeding.

### (3) Pre-emption

Gateway argues that the VA Lenders' Handbook (Handbook) permitted Gateway to issue a loan that exceeded the market value of the property, and that, pursuant to the Supremacy Clause of the United States Constitution, it pre-empts § 31-17-8(m)(8). Ms. Gregory responds that the Handbook is not a rule that receives the benefit of the Supremacy Clause, and even if it was, § 31-17-8(m)(8) and the Handbook can be read in harmony.

The initial question is whether the Handbook is a rule that receives the benefit of the Supremacy Clause and can therefore pre-empt state law. Federal regulations promulgated pursuant to delegated authority have no less pre-emptive effect than federal statutes. *Fid. Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982); *see also* 32 Charles H. Koch, Jr., *Federal Practice and Procedure* § 8167 (2022). Otherwise stated, legislative rules can have pre-emptive effect. *Nat. Resources Def. Council v. Wheeler*, 955 F.3d 68, 83 (D.C. Cir. 2020) (defining a "legislative rule" as "one that has "legal effect" or, alternately, one that an agency promulgates with the "intent to exercise" its "delegated legislative power" by speaking with the force of law"); *see also Children's Hosp. of the King's Daughters, Inc. v. Azar*, 896 F.3d 615, 620 (4th Cir. 2018). However, non-legislative rules, or interpretive rules, do not have preemptive authority. *United States v. Mitchell*, 39 F.3d 465, 470 (4th Cir.1994) (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 301–02 (1979). The critical question in distinguishing between legislative rules and interpretive rules is that the former is subject to the "notice and comment" requirements under the Administrative Procedures Act. *Casa De Maryland v. U.S. Dept. of Homeland Sec.*,

924 F.3d 684, 702 (4th Cir. 2019) (citing *Elec. Privacy Info. Ctr. v. DHS*, 653 F.3d 1, 7 (D.C. Cir. 2011)).

The Court concludes that the provision at issue within the Handbook is an interpretive rule and cannot preempt state law.   There is nothing to suggest that the Handbook was subject to notice and comment procedures, or anything similar.   The Handbook amounts to regulations within the agency, not rules intended to bind tribunals outside of the agency.[10]   *See Splane v. West*, 216 F.3d 1058, 1064 (Fed. Cir. 2000) (holding that regulations must have binding effect on tribunals outside of the agency to be considered a legislative rule); *see also Animal Legal Defense Fund v. Quigg*, 932 F.2d 920, 929–30 (Fed. Cir. 1991).   The VA has issued regulations on the topic of mortgage refinancing, which can be found in the Code of Federal Regulations, unlike the Handbook, which is an interpretative tool for lenders, rather than the VA's legislative rules on the topic.   Other courts have found the VA Handbooks are interpretive rules, amounting to policy statements or enforcement guidelines.   *James v. Von Zemenszky*, 284 F.3d 1310, 1318–19 (Fed. Cir. 2002); *Boyer v. U.S.*, 159 Fed. Cl. 387, 411 (n.25) (Fed. Cl. 2022); *Oztimurlenk v. U.S.*, 162 Fed. Cl. 658, 667 n. 3 (Fed. Cl. 2022). The Handbook does not pre-empt § 31-17-8(m)(8).

The Defendant, in its reply, argues that it is "beside the point" that it "failed to demonstrate preemption because it cited to the VA Lenders' Handbook instead of a statute or regulation." (Def. Reply at 9.)   Gateway argues that because "Congress expressly authorized the VA to provide a benefit for veterans by sponsoring home refinancing loans" under 38 U.S.C. §§ 3702 and 3709, § 31-17-8(m)(8) is pre-empted.   Gateway attempts to bolster this line of argument by

---

[10] Although the Handbook does outline sanctions against program participants, it is clear that those sanctions are imposed by and within the VA, not from outside tribunals.   VA Pamphlet 26-7, Chapter 17.

stating that "banking is not an area of traditional state regulation" and "powers to national banks historically have been interpreted as . . . ordinarily pre-empting state law." (*Id.*)

Preemption can exist in three ways. Express preemption exists when Congress explicitly defines the extent to which it has preempted state law. *English v. Gen. Elec. Co.*, 496 U.S. 72, 78 (1990) (citing *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95–98 (1983)). Field pre-emption may be found when state law is regulating "a field that Congress intended the Federal Government to occupy exclusively." *Id.* at 79. Finally, conflict preemption exists when a state law "actually conflicts with federal law." *Id.* Of course, the Defendant carries the burden of establishing preemption. *Burrell v. Bayer Corp.*, 918 F.3d 372, 382 n.3 (4th Cir. 2019) (citing *Great-W. Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp.*, 523 F.3d 266, 270 (4th Cir. 2008)).

Gateway does not explicitly state which type of preemption applies here. Although the Defendant cites 38 U.S.C. §§ 3702 and 3709, neither contains an explicit provision outlining Congress' intent to preempt state law. Possibly referring to field pre-emption, Gateway argues that "banking is not an area of traditional state regulation" and "powers to national banks historically have been interpreted as . . . ordinarily pre-empting state law." (Def. Reply at 9.) But the Court finds that Gateway has failed to meet its burden of establishing that these statutes governing veterans' benefits amount to a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it."[11] *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

---

[11] Additionally, there is an important distinction between a state's attempt to "directly regulate national banking itself" and "protection of state consumers through generally applicable legislation." *Smith v. BAC Home Loans Servicing, LP*, 769 F. Supp. 2d 1033, 1038 (S.D.W. Va. 2011) (Goodwin, C.J.) (citing *Nat'l City Bank of Ind. v. Turnbaugh*, 463 F.3d 325, 330–31 (4th Cir.2006)).

Lastly, Gateway has not established conflict pre-emption.   Conflict pre-emption occurs when compliance with both federal and state law is impossible, or the federal law could not otherwise be accomplished.   *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143 (1963).   Even assuming, *arguendo*, that the Handbook could have pre-emptive effect, it is not in conflict with § 31-17-8(m)(8).   The Handbook permits "a maximum loan amount of 100 percent of the appraised value, plus the cost of any energy efficient improvements, plus the VA funding fee."   (Exhibit C, Document 6-3 at 22.)   Section 31-17-8(m)(8) prohibits "making any primary or subordinate mortgage loan . . . [with] a principal amount that, when added to the aggregate total of the outstanding principal balances of all other primary or subordinate mortgage loans secured by the same property, exceeds the fair market value of the property."   The Handbook and the statute do not conflict because the Handbook does not require that the lender loan 100 percent of the appraised value; rather, the Handbook states the maximum.[12]   A maximum, by definition, is the highest amount *permitted*, not a *required* amount.   Because the Handbook does not require a lender to loan more than the fair market value, the Handbook and § 31-17-8(m)(8) are not in conflict.   For all of the reasons stated above, Count I should not be dismissed.

*(B) Count III – Violation of 15 U.S.C. § 1639e*

Ms. Gregory alleges that Gateway has violated 15 U.S.C. § 1639e, a provision of the Truth in Lending Act (TILA), by disclosing the proposed loan amount to the appraiser.   Section 1639e makes it "unlawful, in extending credit or in providing any services for a consumer credit transaction secured by the principal dwelling of the consumer, to engage in any act or practice that

---

[12] It states a maximum with the exception of the cost of energy efficient improvements and the V.A. funding fee.

violates appraisal independence as described in or pursuant to regulations prescribed under this section." 15 U.S.C. § 1639e(a). An act or practice "seeking to influence an appraiser or otherwise to encourage a targeted value in order to facilitate the making or pricing of the transaction" constitutes a violation of appraisal independence. 15 U.S.C. § 1639e(b)(3).

Gateway argues that this claim fails because (1) it exceeds TILA's one-year statute of limitations, (2) TILA does not prohibit the disclosure of the proposed loan amount, and (3) disclosure does not constitute a TILA violation because disclosure was mandated by the VA. Ms. Gregory responds that (1) her TILA claim is not time-barred because of either the discovery rule or equitable tolling, (2) surrounding industry practices and history shows that disclosure of a proposed loan amount is a TILA violation, and (3) disclosure was not mandated by the VA, and even if it was, it does not supersede Gateway's statutory obligations. For the reasons stated below, the motion to dismiss Count III should be denied.

### (1) Statute of Limitations

The statute of limitations for a claim under § 1639e is "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Ms. Gregory does not dispute the statute of limitations. Rather, the parties dispute the applicability of doctrines that could avoid the enforcement of the statute of limitations. Gateway argues that the alleged violation occurred when Ms. Gregory accepted Gateway's extension of credit on April 24, 2018, and the complaint was not filed until April 20, 2020, nearly two years later. The Plaintiff argues that the discovery rule postpones the beginning of the limitations period, or alternatively, fraudulent concealment equitably tolls the limitations period. In reply, the Defendant states that the discovery rule does

not apply to TILA claims and that Ms. Gregory has not properly pled the elements for fraudulent concealment.

The discovery rule, generally, provides that "a cause of action accrues when a plaintiff in fact knows or reasonably should know of the wrong." *Martin Marietta Corp. v. Gould*, Inc., 70 F.3d 768, 771 (4th Cir. 1995).   By postponing the accrual date, the discovery rule has the effect of preventing the limitations period from beginning to run.   And, generally, under federal law, "a cause of action accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal." *Nasim v. Warden, Maryland H. of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (citing *United States v. Kubrick*, 444 U.S. 111 (1979)).

However, when the limitations period is "clear and unambiguous," the discovery rule will not apply. *Hamilton v. 1st Source Bank*, 928 F.2d 86, 87 (4th Cir. 1990).   Here, the applicable limitations provision, § 1640(e), is clear.   A claim accrues "one year from the date of the occurrence of the violation," not from the time that the consumer discovers the violation.   Had Congress intended a discovery rule, it could have included such language, or made the limitations clause ambiguous. *See, e.g.*, 28 U.S.C. § 2401(b) (Federal Tort Claims Act filing period commences when "such claim accrues"); 41 U.S.C. § 55(b) (filing period runs from "the date on which the United States first knew or should reasonably have known that the prohibited conduct had occurred"); 22 U.S.C. § 4134(a) (excluding from the filing period "any time during which ... the grievant was unaware of the grounds for the grievance and could not have discovered such grounds through reasonable diligence").

Other courts, applying the TILA limitations language, have also held that the discovery rule does not apply.[13]   *See Rowe v. Aurora Com. Corp.*, CIV.A. 5:13-21369, 2014 WL 3810786, at *9 (S.D.W. Va. Aug. 1, 2014) (Faber, S.J.), *aff'd*, 599 Fed. Appx. 95 (4th Cir. 2015) (unpublished); *see also Polkampally v. Countrywide Home Loans Inc.*, CIV. 13-174 RBK/JS, 2013 WL 5937000, at *6 (D.N.J. Nov. 6, 2013); *McAnaney v. Astoria Fin. Corp.*, 2008 WL 222524 at *5 (E.D.N.Y. 2005).   When interpreting a nearly identical provision[14] within the Fair Debt Collection Practices Act, the Supreme Court held that it is "particularly inappropriate" for the courts to allow the running of a limitations period to begin upon the discovery of a violation when the language of the limitations provision is so clear.   *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019). Accordingly, the Court declines the Plaintiff's request to apply the discovery rule to a claim based on a violation of § 1639e.

Ms. Gregory argues that even if the discovery rule does not apply, the statute of limitations period has been equitably tolled due to fraudulent concealment.   Gateway does not contest the applicability of fraudulent concealment to TILA claims, but argues that Ms. Gregory has not sufficiently pled the elements for fraudulent concealment.   (Def. Reply at 4.)

---

[13] The Plaintiff urges the Court to either distinguish or reject the application of *Rowe*.   The Plaintiff argues that *Rowe* dealt with a "classic disclosure violation" of which the consumer had notice, and therefore unlike the case at hand that deals with a violation within the lending process.   However, the language of the limitations clause in 15 U.S.C. § 1640(e) does not create such a distinction, nor does it allow the Court to make such a distinction.   The limitations period is clear—the limitations period begins at the "occurrence of the violation."   The Plaintiff alternatively argues that "[t]he great weight of authority is against *Rowe*."   (Pl. Resp. at 13 (n.8).)   However, of the four cases cited by the Plaintiff, only two cases, *Riggins v. Bank of Am.*, 2012 WL 13049692 (C.D. Cal. July 18, 2012) and *Brown v. Bank of Am., N.A.*, 2016 WL 3014676 (E.D. Wis. May 24, 2016), apply the discovery rule to TILA claims.   Neither case is binding on this Court and neither opinion cites authority binding on this Court.   More importantly, each case cited by the Plaintiff was decided prior to *Rotkiske v. Klemm*, which interpreted a nearly identical limitations clause within the FDCPA and refused to apply the discovery rule.   140 S. Ct. 355 (Dec. 10, 2019).

[14] 15 U.S.C. § 1692k(d) provides "[a]n action to enforce any liability created by this subchapter . . . may be brought . . . within one year from the date on which the violation occurs."

While the discovery rule prevents a claim from accruing and prevents the limitations period from beginning to run, equitable tolling extends the limitations period itself.  Usually, the "fraudulent concealment tolling doctrine is to be 'read into every federal statute of limitation.'" *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).   However, "[w]hen Congress makes a limitations period a jurisdictional prerequisite, then courts may not toll the limitations period on any equitable grounds."  *Edmonson v. Eagle Natl. Bank*, 922 F.3d 535, 546 (4th Cir. 2019) (citing *Harris v. Hutchinson*, 209 F.3d 325, 328 (4th Cir. 2000)).   Thus, the question becomes whether TILA's statute of limitations is a jurisdictional prerequisite.

Absent a clear statement, "courts should treat a statutory timeliness requirement as nonjurisdictional in character."  *Edmonson*, 922 F.3d at 546 (citing *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)) (quotations and brackets omitted).   To make a limitations provision jurisdictional Congress must "do something special."  *U.S. v. Wong*, 575 U.S. 402, 403 (2015).

A review of § 1640(e)[15] reveals that the provision does not expressly, or even impliedly, state that the limitations period is a jurisdictional prerequisite.   There is no statement of a

---

[15] 15 U.S.C. § 1640(e) in full states:

> Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or, in the case of a violation involving a private education loan (as that term is defined in section 1650(a) of this title), 1 year from the date on which the first regular payment of principal is due under the loan. Any action under this section with respect to any violation of section 1639, 1639b, or 1639c of this title may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law. An action to enforce a violation of section 1639, 1639b, 1639c, 1639d, 1639e, 1639f, 1639g, or 1639h of this title may also be brought by the appropriate State attorney general in any appropriate United States district court, or any other court

jurisdictional nature.   Therefore, the Court finds that TILA's limitations provision is non-jurisdictional and equitable tolling can extend the limitations period.   Although the Fourth Circuit has not squarely addressed this question, other courts have reached the same result.   *Heil v. Wells Fargo Bank, N.A.*, 298 Fed. Appx. 703, 707 (10th Cir. 2008) (unpublished) (holding that equitable tolling applies to TILA claims but that the plaintiff has failed to meet its burden); *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir. 1998) (holding TILA's limitation provision is non-jurisdictional and subject to equitable tolling); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir. 1998) (same); *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984) (same); *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986) (holding equitable tolling is appropriate for TILA claims to effectuate the goals of the statute); *Rowe v. Aurora Com. Corp.*, CIV.A. 5:13-21369, 2014 WL 3810786, at *8 (S.D.W. Va. Aug. 1, 2014) (Faber, S.J.), *aff'd*, 599 Fed. Appx. 95 (4th Cir. 2015) (unpublished) (stating that fraudulent concealment can toll the statute of limitations in 15 U.S.C. § 1640(e)); *Barns v. West, Inc.*, 243 F.Supp.2d 559, 562–63 (E.D. Va. 2003) (same); *Roach v. Option One Mortg. Corp.*, 598 F. Supp. 2d 741, 754 (E.D. Va. 2009), *aff'd*, 332 Fed. Appx. 113 (4th Cir. 2009) (unpublished).

With the applicability of equitable tolling due to fraudulent concealment settled, the issue becomes whether Ms. Gregory can avail herself of its benefit.

---

of competent jurisdiction, not later than 3 years after the date on which the violation occurs. The State attorney general shall provide prior written notice of any such civil action to the Federal agency responsible for enforcement under section 1607 of this title and shall provide the agency with a copy of the complaint. If prior notice is not feasible, the State attorney general shall provide notice to such agency immediately upon instituting the action. The Federal agency may--
(1) intervene in the action;
(2) upon intervening--
(A) remove the action to the appropriate United States district court, if it was not originally brought there; and
(B) be heard on all matters arising in the action; and
(3) file a petition for appeal.

When alleging fraudulent concealment, the plaintiff must satisfy the heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. *Edmonson v. Eagle Natl. Bank*, 922 F.3d 535, 553 (4th Cir. 2019). However, when "(1) the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial pre-discovery evidence of those facts" the courts should be hesitant to dismiss a complaint alleging fraudulent concealment. *Id.* (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

To toll the statute of limitations under fraudulent concealment "a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." *Id.* at 548 (citing *Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc.*, 71 F.3d 119, 122 (4th Cir. 1995). Fraudulent concealment usually requires an "affirmative [act] of concealment" and it is the plaintiff's burden to allege these affirmative acts. *Id.* at 553–54. However, the alleged affirmative acts of concealment "may include acts of concealment involved in the [alleged] violation itself." *Supermarket of Marlinton*, 71 F.3d at 122. Quite similarly, a plaintiff may satisfy her burden of alleging an affirmative act by alleging "that the defendant employed some trick or contrivance intended to exclude suspicion and prevent inquiry." *Edmonson*, 922 F.3d at 553 (citing *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 446–47 (6th Cir. 2012)).

It is clear from the face of the Complaint that the one-year limitations period has run. The Complaint states that the loan was executed on April 24, 2018, and Ms. Gregory did not file her

first complaint until nearly two years later on April 21, 2020.   However, Ms. Gregory can avail herself of the doctrine of fraudulent concealment.

Ms. Gregory alleges that Gateway has "systematically sought to influence appraisers" and one of its methods was to "provide the appraisers with the proposed loan amounts on appraisal request forms."  (Compl. at ¶¶ 36, 37.)   Additionally, Gateway "did not inform [the borrowers] of its efforts to influence the appraisal by passing on loan amounts."  (*Id.* at ¶ 47.)   It was not until discovery in this underlying case that the Plaintiff discovered the alleged improper appraisal report.   Reading Ms. Gregory's Complaint as a whole, and drawing reasonable inferences therefrom, she has sufficiently pled that Gateway has engaged in the affirmative act of concealment.   The alleged violation and "trick" of concealment amount to the following: Gateway would have a borrower pay for a third-party appraisal that was represented as independent and fair. However, when communicating with the appraiser, Gateway would encourage the appraiser to reach a higher appraised value.   The borrower was told the appraiser was independent and was not privy to the communications between Gateway and the appraiser, therefore allowing Gateway to eliminate suspicion that it was executing loans greater than the true market value.

Although the Complaint could have more expressly stated the affirmative act of concealment, *Harrison* advises hesitancy in dismissing imperfect pleadings.   176 F.3d at 784. Because (1) Ms. Gregory has fairly alleged a violation of a scheme involving concealment; (2) the pleadings have sufficiently noticed Gateway of the circumstances of concealment, allowing the defendant to prepare for trial; and (3) Ms. Gregory has provided substantial factual allegations, including the appraisal request form, dismissal under Rule 12(b)(6) would be inappropriate. The Plaintiff has satisfied her burden to allege affirmative acts of concealment.

23

Gateway additionally argues that Ms. Gregory has failed to sufficiently plead the due diligence element of fraudulent concealment because she has failed to allege specific actions she took.   However, even though the fraudulent concealment test requires a factual pleading sufficient to show a plaintiff's due diligence, that requirement does not necessitate the plaintiff to show that she "engaged in any specific inquiry." *Supermarket of Marlinton*, 71 F.3d at 128.   "Generally, whether a plaintiff exercised due diligence is a jury issue not amenable to resolution on the pleadings or at summary judgment." *Edmonson*, 922 F.3d at 554.

Therefore, because it is not generally proper to resolve a question of a plaintiff's diligence on the pleadings and because Ms. Gregory has pled that she did not have access to the appraisal request form until April 15, 2021, the Court finds that Ms. Gregory has sufficiently pled the due diligence element of fraudulent concealment.

### (2) Sufficiently Pled Violation of § 1639e(a)

Gateway argues that its disclosure of the proposed loan amount does not violate appraisal independence, or alternatively, disclosure does not constitute a TILA violation because disclosure was mandated by the VA.   Ms. Gregory counters that the disclosure of a proposed loan amount is a TILA violation, and that disclosure was not mandated by the VA, and, even if it was, it does not supersede Gateway's statutory obligations.

TILA states that it is a violation to "engage in any act or practice that violates appraisal independence" which includes "seeking to influence an appraiser or otherwise to encourage a targeted value in order to facilitate the making or pricing of the transaction."   15 U.S.C. § 1639e. The Plaintiff has plausibly alleged such a violation.   Specifically, Ms. Gregory alleges that Gateway "sought to influence appraisers" and did so by providing the appraisers "with the

proposed loan amounts . . . before the appraisers provide[d] their appraisal reports."   (Compl. at

¶ 37.)   The disclosure was done "to support higher loan amounts."   (*Id.* at ¶ 36.)

Gateway's argument that disclosure does not violate § 1639e reads the statute's language

too narrowly.   The statute bans "any act . . . seeking to influence an appraiser."   15 U.S.C. §

1639e.   It is of no consequence that Ms. Gregory has not cited a specific TILA provision

precluding disclosure, because the language of § 1639e bans *any* act if it was done with the intent

to influence an appraiser.   Thus, whether the disclosure of the loan amount violates the statute is

ultimately a factual determination regarding Gateway's intent or purpose.   It is not an appropriate

consideration for the Court in assessing a motion to dismiss.

Additionally, Gateway's argument that the VA form precludes a violation of § 1639e is

similarly fact dependent.   Ultimately, this argument is that Gateway did not seek to violate

appraisal independence because it was completing a required form.   However, the Complaint does

not allege that disclosure was required.   Rather, it alleges that Gateway "systematically sought to

influence appraisers" through the use of the form.   (Compl. at ¶ 36.)   Whether it did or it did not

seek to influence appraisers involves factual considerations and credibility assessments, not

appropriately addressed at this stage of the proceedings.   It is sufficient, at this stage, that a

violation has been properly pled.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that

*Defendant Gateway Mortgage Group LLC's Motion to Dismiss for Failure to State a Claim*

(Document 6) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:      March 20, 2023

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA